# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Darlington Amadasu,
Plaintiff

vs                                 Case No. 1:04-cv-772-MRB-TSH
                                       (Barrett, J.; Hogan, M. J.)

General Revenue Corporation, et. al.,
Defendants

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to the Court's March 29, 2007 Order requiring pro se plaintiff Darlington Amadasu to show cause why he should not be subject to sanctions pursuant to Fed. R. Civ. P. 11(c)(1)(B), for causing forged or altered documents to be presented to the Court and for using the documents to harass defendant, multiply the proceedings, and cause unnecessary delay and expense to both the parties and this Court. (Doc. 55). Pursuant to the Court's Order, plaintiff was granted thirty days from the order's filing date within which to respond. (Id.). Prior to the expiration of the thirty day period, plaintiff moved the Court for an indefinite stay of all proceedings. (Doc. 57). The Court denied plaintiff's motion for a stay in an Order dated September 7, 2007.[1] (Doc. 62). To date, plaintiff has not responded to the Court's Show Cause Order.

---

[1] Plaintiff filed an "Emergency Motion for Judicial Notice & Stay Proceedings" on January 30, 2007, (doc. 48), which the Court denied from the bench at the March 28, 2007 evidentiary hearing. The Court's ruling was then formalized by written order denying the motion for stay on September 7, 2007. (See Doc. 61).

Pro se plaintiff Darlington Amadasu initiated the present action on November 12, 2004, with the filing of a complaint against defendant General Revenue Corporation, alleging violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq., and related state law claims. (Doc. 1). The original complaint was filed on plaintiff's behalf by his former attorney, Steven Shane. (Id., Att. 2, Civil Cover Sheet). The complaint was filed with a series of attachments, including Attachment 1 which encompasses Exhibits A-C. (Id.). Exhibit C contains a series of twelve debt collection letters allegedly sent to plaintiff by defendant General Revenue Corporation. Approximately one month after filing the complaint, plaintiff's counsel sought and was granted leave to withdraw. (Docs. 7, 8). Since that time, plaintiff has been proceeding pro se. On June 13, 2006, defendant General Revenue Corporation filed a Motion to Strike Exhibit C to Plaintiff's Complaint. (Doc. 28). The Court held an evidentiary hearing on defendant's motion to strike on March 28, 2007.

Defendant General Revenue Corporation moved to strike Exhibit C to plaintiff's original complaint on the grounds that ten of the twelve letters contained in the exhibit were forged and therefore irrelevant, impertinent, or scandalous under Fed. R. Civ. P. 12(f). In support of their motion, defendant tendered seven exhibits which were received into evidence at the hearing on this matter, and offered the testimony of defendant's witnesses, Stephen Meier, defendant's former Internal Compliance Officer, and David Stocker, Associate General Counsel for Sallie Mae Corporation, assigned as General Counsel for defendant General Revenue Corporation, a wholly owned subsidiary of Sallie Mae. Pro se plaintiff Amadasu also testified at the hearing. In addition, the Court called plaintiff's former attorney, Steve Shane, to testify as the Court's witness to a limited set of questions concerning the preparation and filing of Exhibit C to the original complaint. The weight of the credible evidence in this case overwhelmingly demonstrated that ten of the twelve letters contained in Exhibit C to the original complaint are forgeries or alterations and do not constitute letters actually sent to plaintiff by defendant General Revenue Corporation. As set forth in the Court's March 29, 2007 Opinion and Order, the Court reached this conclusion based on the following documentary evidence and testimony.

Stephen Meier, former Internal Compliance Officer for defendant General Revenue Corporation, testified concerning defendant's computerized system known as the "Collection Management System" or "CMS" which contains a database for all

2

collection activity concerning accounts turned over to General Revenue Corporation for collection. Exhibit 1 from the hearing is a "History Print" which indicates that defendant received an account from the University of Cincinnati, seeking to collect a debt from plaintiff, Darlington Amadasu. This Borrower History Print indicates that the account was received at General Revenue Corporation on November 13, 2002, and that the last collection activity by defendant occurred on October 31, 2003. This history includes a log of all telephone calls made to the debtor, in this case, plaintiff Amadasu. On the date of final contact, the collector placed a telephone call to plaintiff's last known residential telephone number and received no answer. According to defendant's records, the account was subsequently closed and returned to the client, University of Cincinnati, on November 29, 2003. Mr. Meier testified that once an account is closed, the CMS computerized system will not permit use of the system to telephone a debtor or generate letters to that debtor.

Hearing Exhibit 2 is a report of letter histories generated by the CMS which indicates that plaintiff was sent the four standard debt collection letters which constitute the CDA-series of collection letters. The report indicates that defendant sent plaintiff CDA1 on November 19, 2002; CDA2 on December 3, 2002; CDA3 on December 18, 2002 and CDA4 on January 2, 2003. Defendant's records indicate that these were the only debt collection letters sent to plaintiff by defendant General Revenue Corporation with respect to the debt he allegedly owed the University of Cincinnati.

Mr. Meier and Mr. Stocker testified that the standard CDA-series debt collection letters, admitted as Hearing Exhibits 3-6, are form letters which are generated as part of the CMS system at the request of the collector and cannot be modified or altered by the collector with the exception of inserting the name and address of the debtor, the date of the letter, and the amount sought in collection. Mr. Stocker testified at length about the controls which prevent modification of the body of the form letters by anyone but three unnamed persons at defendant General Revenue Corporation who are specially authorized and endowed with security clearance to modify letters contained in the CMS database. In addition, Mr. Stocker, Associate General Counsel at defendant's parent corporation, is assigned the task of annually reviewing all form letters issued by defendant General Revenue Corporation. He testified that any changes or corrections, including punctuation, in the text of the debt collection letters must go through levels of review and certification before a form letter can be altered and then coded into the CMS database. Neither he, nor Mr.

3

Meier, nor individual collectors have the ability to make such changes in the CMS.

Both Mr. Meier and Mr. Stocker reviewed Exhibit C to the original complaint, identified at the hearing as Hearing Exhibit 7, and identified the last two pages of that exhibit as copies of defendant's letters CDA4 and CDA3 which were addressed to plaintiff. They also both testified that the remaining ten pages constitute documents which are not letters contained in or generated by the CMS database. They testified as to some of the apparent inaccuracies in or alterations to ten pages by which they could determine that these letters were not generated by the defendant's CMS. These include, but are not limited to the following: (1) none of the ten pages contain a notice directing the addressee to read and review language printed on the back of each General Revenue Corporation CDA-series debt collection letter, nor do the copies include anything printed on the back side; (2) letters with a perforation for remittance of payment are only perforated along the bottom 1 ½ inch of the letter and several of plaintiff's documents in Exhibit C have much more blank space than normal; (3) a number of the plaintiff's purported letters fail to contain a signatory line or the name of the collector; (4) the "mini-Miranda" language contained in defendant's form letters is not used as introductory language for any form debt collection letters in defendant's CMS database, whereas on several of plaintiff's documents this language appears at or near the top of the page and (5) defendant does not have a letter CDA5 in its database, nor can a collector instruct the system to generate such a letter. The testimony of Messrs. Meier and Stocker was no less than wholly credible on these issues.

In response to defendant's motion to strike, plaintiff filed a Declaration in which he claimed that if there are any inaccuracies or alterations in the letters comprising Exhibit C to the original complaint, they were either made by defendant's own employees, or by plaintiff's former counsel who copied the documents and filed Exhibit C with the Court. Based on the credible testimony of Messrs. Meier and Stocker described above, there is no credible basis to support plaintiff's bald assertion that defendant's own employees somehow altered the CMS database to generate letters in his collection case beyond the four standard letters in the CDA-series. Likewise, Attorney Steve Shane testified that while he does not specifically recall filing the complaint in this case, he would not and does not as a matter of practice, alter any documents presented by a client before they are copied and submitted as exhibits in a case before the court. Thus, he testified that neither he nor any member of his staff would have torn off any portion of plaintiff's original documents at the

4

perforation line before copying them to be attached as Exhibit C to the original complaint in this case.

Pro se plaintiff's self-serving testimony on this issue was not credible. He testified that it was his regular habit to maintain a diary or journal which included all telephone and letter contacts made by defendant General Revenue Corporation and that this diary, a copy of which was attached as an exhibit to his Declaration, supports his claims in this case. In the wake of the overwhelming and wholly credible testimony and documentary evidence presented by defendant's witnesses to the contrary, the Court concluded that plaintiff's testimony lacked credibility, notwithstanding his alleged contemporaneous diary notes. Consequently, the Court concluded that defendant's motion to strike Exhibit C was well-taken with respect to the first ten pages of that exhibit and ordered those pages stricken from the record.

The Court now recommends that plaintiff's complaint be dismissed as a sanction for violation of Fed. R. Civ. P. 11. Rule 11(b) provides in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney *or unrepresented party* is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]

Fed. R. Civ. P. 11(b)(emphasis added). Defendant Amadasu's pro se status does not exempt him from the provisions of Rule 11. A pro se litigant may not flagrantly ignore relevant procedural or substantive rules of law. The Court may impose appropriate sanctions against a pro se litigant for violating Rule 11. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 548 (1991) (Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard"); *Spurlock v. Demby*, 48 F.3d 1219 (table), No. 92-3842, 1995 WL 89003, at **2 (6th Cir. Mar. 2, 1995) (per curiam) ("while Rule 11 does provide that a person's knowledge, information, and belief are to be based on

5

reasonableness under the circumstances, the rule does not provide a different standard for attorneys and non-attorneys"); *see also Doyle v. United States,* 817 F.2d 1235 (5th Cir.), *cert. denied,* 484 U.S. 854 (1987). "[P]ro se filings do not serve as an 'impenetrable shield [from application of Rule 11], for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken,* 841 F.2d 386, 387 (11th Cir. 1988) (quoting *Farguson v. Mbank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986)).

The test for whether sanctions under Rule 11 are appropriate is whether the conduct of the litigant was objectively reasonable under the circumstances. *See Business Guides, Inc.,* 498 U.S. at 551; *Lemaster v. United States,* 891 F.2d 115, 118 (6th Cir. 1989). Forgery of evidentiary materials is by no means reasonable under any circumstances. By presenting forged documents, plaintiff has attempted to perpetrate a fraud upon this Court, has unnecessarily multiplied these proceedings, and needlessly increased the costs of this litigation both to defendants who have been forced to defend against frivolous claims, and to the Court which has expended immeasurable resources to address the claims asserted in this action. One of the basic purposes of Rule 11 is to deter baseless filings in the district courts. *Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 393 (1990). There is no basis whatsoever to conclude that plaintiff's conduct in this case was objectively reasonable.

The Court is accorded wide discretion to fashion an appropriate sanction for violations of Rule 11, including the authority to issue directives of a nonmonetary nature. *Lockheed Martin Energy Systems, Inc. v. Salvin,* 190 F.R.D. 449, 457 (E.D. Tenn. 1999). Rule 11 provides in pertinent part:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion an warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Civ. P. 11(c)(2). As for the nature of the sanction recommended by this

6

Court, the undersigned respectfully submits that nothing less than dismissal of this action is appropriate under the circumstances.

The Court finds that a monetary sanction is insufficient to deter plaintiff for several reasons. First, plaintiff has argued in several of his filings that he is entitled to pauper status and that he is presently homeless and unemployed. (See e.g. Docs. 48, 57). Plaintiff made similar statements on the record at the evidentiary hearing. While plaintiff has not filed a financial affidavit supporting his pauper status in this case, a review of the Court's Case Management/Electronic Case Filing (CM/ECF) system reveals that plaintiff has filed no less then twelve cases in this District, and the Court has granted *in forma pauperis* (IFP) status to plaintiff in eight of those cases.[2] *See* Amadasu v. Mercy Franciscan Hosp., et. al., Case No. 1:01-cv-182-SAS-TSB; Amadasu v. Donovan, et. al., 1:01-cv-210-SJD-TSB; Amadasu v. Health Alliance of Greater Cincinnati et. al., 1:01-cv-284-SJD-TSB; Amadasu v. Macheret et. al., 1:02-cv-263-SJD-TSB; Amadasu v. City of Cincinnati et. al., 1:02-cv-827-HJW-TSH; Amadasu v. The Christ Hospital et. al., 1:04-cv-456-SJD-TSH; Amadasu v. University Hospital, Inc. et. al., 1:05-cv-45-SSB-TSB; Amadasu v. Commissioner of Social Security, 1:06-cv-584-MRB-TSH. The imposition of a monetary sanction payable to the Court that is otherwise uncollectible is no deterrent to future fraud upon this Court. Moreover, even if plaintiff were able to pay a monetary fine to the court, such a sanction is insufficient to deter plaintiff from filing frivolous lawsuits or preparing forged documents.

Significantly, the Court notes that this is not the first time that plaintiff has been found to have forged documents submitted to the Court as evidence in support of his case, or to have made intentional misrepresentations to the Court. See Amadasu v. Donovan, et. al., Case No. 1:01-cv-210-SJD-TSB , Document 137, Order

---

[2] Of the four cases where pauper status was not granted, the Court notes that in two of those cases plaintiff filed motions for leave to proceed IFP, but the cases were transferred out of this judicial district before the IFP motions were ruled upon. *See* Amadasu v. University of Utah, et. al., Case No. 1:00-cv-70-HJW-JS and Amadasu v. Erie County, et. al., Case No. 1:06-mc-03-SJD-TSB. The third case where IFP was not granted appears to be a miscellaneous case related to subpoenas issued in the University of Utah action which was previously removed. A $30.00 filing fee was paid in that instance. *See* Amadasu v. University of Utah, Case No. 1:02-mc-26-HJW-TSH. The only case in which pauper status was denied is the present action in which the filing fee was paid in full with the filing of the complaint, presumably by plaintiff's former counsel who filed this action on his behalf.

7

Granting In Part Motion to Strike (finding plaintiff had forged correspondence allegedly written by defendants) and <u>Amadasu v. Macharet, et. al</u>, Case No. 1:02-cv-263-SJD-TSB, Document 88, Report & Recommendation (finding plaintiff's intentional misrepresentations on record to court constituted support for recommending dismissal of the action).

Dismissal may be imposed as a sanction under Rule 11 in cases of serious misconduct when lesser sanctions would be ineffective or are unavailable. *Jimenez v. Madison Area Technical College*, 321 F.3d 652 (7th Cir. 2003); *Marina Management v. Vessel My Girls, C.A.*, 202 F.3d 315, 340 (D.C. Cir. 2000). Fraud on the Court warrants dismissal as a sanction. *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685 (8th Cir. 1992); *Sun World Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992); *Kojis v. Equifax Credit Information Servs.*, 2004 WL 1005664 (N.D. Ill. Sept. 27, 2004). The Supreme Court has made clear that the sanction of dismissal must be available to the district courts in appropriate cases, "'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent'." *Kojis*, 2004 WL 1005664 at *8 (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). As a district court from Illinois stated in a case involving false testimony:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain and nothing to lose, if manufactured evidence is merely excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Brady v. United States*, 877 F. Supp. 444, 453 (C.D. Ill. 1994).

Plaintiff's use of forged documents is egregious behavior which he apparently sees fit to repeat before the courts of this district. The fact that the forged documents were stricken from the record in <u>Amadasu v. Donovan, et. al.</u>, Case No. 1:01-cv-210-SJD-TSB, was not a deterrent to his use of forged documents in the present case. Moreover, if other litigants come to believe they can "take their chances" with forged documents and merely have them stricken while their litigation continues, this case would stand as "an open invitation to abuse the judicial process." *Brady*, 877 F. Supp. At 453. Amadasu's egregious conduct, his lack of response to this Court's

8

show cause order, the ineffective nature of a monetary sanction under the circumstances, and the need to impose sanctions, "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others" force the conclusion that no other sanction would be efficacious.

For all these reasons, the Court hereby RECOMMENDS that this action be dismissed as a sanction for plaintiff's flagrant violation of Fed. R. Civ. P. 11 as set forth above, and this case be TERMINATED on the docket of this Court.

Timothy S. Hogan
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Darlington Amadasu,
    Plaintiff

vs                                 Case No. 1:04-cv-772-MRB-TSH
                                       (Barrett, J.; Hogan, M. J.)

General Revenue Corporation, et. al.,
    Defendants

## NOTICE

    Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 9-21-07. Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).
    In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ | ☐ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Darlington Amadasu<br>PO Box 6263<br>Cinti, OH 45206 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7002 0860 0000 1409 7288 | |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-01-M-2509 |

1:04cv772 Docs. 64 + 65